IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| WILLIAM L. BRADY, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 03-6166-SJ-W-HFS |
| RICHARD J. COYLE, et al., | ) |
| Defendants. | ) |

**ORDER**

Before the court is the motion of plaintiff, William L. Brady, for summary judgment. Also, before the court is defendants' cross motion for summary judgment. Defendants in this case include Custom Construction Enterprises, L.L.C. ("Custom"); First Mortgage Choice, L.L.C. ("First Mortgage"); Richard J. Coyle a/k/a D.J. Coyle; and Joseph F. Scassellati.[1]

In his complaint, plaintiff asserts two causes of action alleging in Count I a claim for overtime pay pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* ("FLSA or the Act"); and in Count II a claim for breach of contract. Plaintiff seeks, *inter alia*, damages under Count I for straight time compensation and unpaid overtime compensation in the amount of

---

[1]Custom and First Mortgage are limited liability companies with their headquarters and principal place of business in Riverside, Missouri; Coyle and Scassellati are co-owners and managing members of Custom and First Mortgage.
However, defendants state that First Mortgage is an entity that was formed, but has never engaged in any business activities.

$4,820.30 and liquidated damages in the amount of $1,393.87; and damages under Count II for compensation in the amount of $45,000, as well as liquidated damages in the amount of $112,000.[2]

In support of his motion, plaintiff essentially claims that as a nonexempt employee who worked in excess of 40 hours a week, under FLSA, he should be compensated for the overtime worked. Plaintiff also argues that notwithstanding an agreement to increase his salary to $45,000 a year upon obtaining a mortgage broker's license for Custom, defendants withheld necessary information from him required to successfully obtain the license. As to Custom's counterclaim, plaintiff claims that defendants were aware that he held other professional licenses, and that the outside activity complained of concerned a customer who could not be serviced by Custom; thus, plaintiff's servicing of this customer resulted in no harm to defendants.

In its cross motion, defendants contend that plaintiff was an exempt employee and not covered under the FLSA. As to Count II, defendants contend that obtaining a license was a provision of the job description, and did not constitute a contract; and that plaintiff was not damaged.

Background Facts

It is undisputed that plaintiff was hired by Custom on or about January 8, 2003, as a Finance/Marketing Manager, and continued in that position until he resigned on or about September 2, 2003. It is also undisputed that, pursuant to a job description executed by plaintiff and Scassellati, the duties included, but were not limited to, working with Coyle on marketing; getting and setting leads for the sales staff, and pertaining to homeowners; and obtaining financing through lenders for

---

[2] In its counterclaim, defendant Custom alleged that plaintiff interfered with its business relationship with its customers solely to obtain pecuniary benefits for himself.

jobs. In addition to his base salary, plaintiff was paid a 1% commission on marketing and financing jobs. Upon Custom becoming a licensed broker in Missouri, plaintiff's salary was to increase to $45,000 a year.

Standard of Review for Summary Judgment

Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Nelson v. Ellerbe Beckert Const. Services, 283 F.Supp.2d 1068 (D.Minn. 2003); citing, Fed.R.Civ.P. 56©; see also, Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Nelson, at 1076. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Id; citing, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The Court must view the evidence, and the inferences that may reasonably be drawn from the evidence, in the light most favorable to the nonmoving party. Nelson, 283 F.Supp.2d at 1076. However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designated to secure the just, speedy, and inexpensive determination of every action." Nelson, at 1076-77.

Count I - Fair Labor Standards Act

The FLSA requires covered employers to compensate non-exempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours. Freeman v. Wal-Mart Stores,

3

Inc., 256 F.Supp.2d 941 (W.D.Ark. 2003); citing, 29 U.S.C. § 207(a). The statute exempts from its overtime protections "any employee employed in a bona fide executive, administrative, or professional capacity." Freeman, at 943-44; citing, 29 U.S.C. § 213(a)(1). Extensive regulations defining the types of employees who fall within these exemption categories have been promulgated by the Secretary of Labor. Freeman, at 944; see, 29 C.F.R. pt. 541.

To determine whether a particular employee falls under the administrative exemption, the Department of Labor created a long test and a short test. Nelson v. Ellerbe Beckert Const. Services, 283 F.Supp.2d at 1077; see, 29 C.F.R. § 541.2. For employees who earn more than $250 per week, the "administrative employee" exemption applies, and the short test is appropriate to use. Id. Under the short test, three criteria must be satisfied in order for an employee to be considered an exempt employee: (1) the employee must have been "salaried;" (2) the employee's primary duties must be directly related to management policies or business operation; and (3) the employee must have customarily and regularly exercised discretion and independent judgment. Id. Disputes regarding the nature of an employee's duties are questions of fact, but the ultimate question whether an employee is exempt under the FLSA is an issue of law. Jarrett v. ERC Properties, Inc., 211 F.3d 1078, 1081 (8th Cir. 2000). Plaintiff does not raise claims regarding the first and second prongs, but, rather, argues that his duties did not meet the third prong. (Plaintiff's Memo.: pg. 4; line 8).

An employee is considered to be paid on a salary basis if he "regularly receives each pay period on a weekly basis or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed." Nelson v. Ellerbe Beckert Const. Services, 283 F.Supp.2d at 1077. Here, the parties do not dispute that plaintiff received a predetermined amount of pay each period

4

which was not subject to reduction. Thus, there is no genuine issue of material fact with respect to this factor.

An analysis of the second prong requires a finding that in addition to receiving a salary instead of hourly compensation, an employee's primary job duties must consist of office or nonmanual work directly related to management policies or general business operations. Nelson, at 1079.[3] As a general rule, an employee's primary job duty is that which occupies more than 50 percent of his or her time. Id. Again, this prong is not disputed, therefore, there is no genuine issue of material fact with respect to this factor.

As to the third prong of the analysis, the exercise of discretion and independent judgment "involves the comparison and evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." Nelson, at 1081; see, 29 C.F.R. § 541.207(a). It means "that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." Id. The general test for the administrative employee exemption includes a requirement that the employee "customarily and regularly exercises discretion and independent judgment." Dymond v. United States Postal Serv., 670 F.2d 93, 95 (8th Cir. 1982); citing, 29 C.F.R. § 541.2(b). However, where, as here, an employee's salary exceeds $250.00 per week[4], that requirement is reduced to requiring

---

[3]In evaluating whether an employee's primary duties are directly related to management policies or business operation, the following factors are considered: (1) the relative importance of the administrative duties as compared with other types of duties; (2) the frequency with which the employee exercises discretionary powers; (3) his relative freedom from supervision; and (4) the relationship between his salary and the wages paid other employees for the kind of non-exempt work performed by the administrator. Nelson, at 1079; see, 29 C.F.R. § 541.206(b).

[4]In his deposition, plaintiff testified that he was paid approximately $500.00 a week, until April of 2003, when his salary was increased to approximately $700.00 a week. (Plaintiff's

5

that the employee's primary duty simply "includes work requiring the exercise of discretion and independent judgment." Id; citing, 29 C.F.R. § 541.2(e)(2).

According to plaintiff, he worked within established parameters set by Coyle; he had little or no authority to sell products, price jobs or estimate jobs. (Plaintiff's Memo.: pg. 6; lines 16, 20). Further, he could not sign checks, tax or employer forms, and he could not hire or discharge other employees without the approval of Coyle or Scassellati. (Id: pgs. 6-7; lines 23, 25-26).

In his deposition, Coyle testified that as a finance marketing manager plaintiff was responsible for finding lenders to help finance home improvements and preparing the paperwork; this included getting and setting leads for the salesmen and the owners. (Coyle Depo.: pgs. 13-14, 33). Because plaintiff's commission was tied to the performance of the salespeople, he had significant input regarding their performance. (Id.: pg. 16). In fact, plaintiff was responsible for making sure the salespeople knew where to go, what time to be there, and what products to present. (Id.: pg. 32). He also coordinated with the marketing people on setting ads. (Id). Coyle agreed that part of plaintiff's duties were clerical in nature, i.e. advising Coyle when a loan was approved so that construction could be scheduled. (Coyle Depo.: pg. 29). Coyle also agreed that plaintiff did not have authority to sign checks, however, in his work with the finance companies he knew when the money would arrive in order to advise the homeowners to pick up their money, or to sign legal documents in order to obtain financing so that construction could begin. (Id.: pg. 31). According to Coyle, plaintiff did not require supervision, did an excellent job managing himself and the employees below him. (Id).

---

Depo.: pg. 60).

Contrary to plaintiff's contentions, the fact that his work was subject to approval, even to the extent that a decision may be reversed by higher level management, it does not follow that the work did not require the exercise of discretion and independent judgment as the terms are defined for the administrative employee exemption. Dymond, 670 F.2d at 96. Plaintiff agrees with the description of his duties as set forth above, but argues that he did not make final decisions. (Plaintiff's Depo.: pg. 43). His argument is unpersuasive, for although the final decision did not rest with him, he made recommendations regarding hiring, and interviewed prospective candidates before they were hired. (Coyle Depo.: pg. 37). see, McAllister v. Transamerica Occidental Life Ins., 325 F.3d 997, 1001 (8th Cir. 2003) (the decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action). Similarly without merit is plaintiff's contention that he merely followed guidelines in an employee handbook. McAllister, at 1001.

Furthermore, it is undisputed that Custom was a construction company involved in general home improvement projects. (Coyle Depo.: pg. 21). Plaintiff testified that he worked on marketing; obtained sales leads for the salespeople and leads pertaining to homeowners; and maintained the job boards as they related to sales and finance. (Brady Depo.: pg. 43). These were matters of significance for Custom requiring a sufficient degree of discretion and independent judgment. McAllister, at 1001; see also, Carlson v. C.H. Robinson Worldwide, Inc., 2005 WL 758601 (D.Minn. Mar. 30, 2005). Thus, there is no genuine issue of material fact upon which a reasonable jury could find that plaintiff was a nonexempt employee entitled to overtime compensation under the FLSA.

7

Count II - Breach of Contract

Summary judgment is, however, not authorized as to Count II of the complaint alleging breach of contract. There is no dispute that contained in the job description was a provision that plaintiff's salary was to be increased to $45,000 upon successfully obtaining a broker's license for Custom. Plaintiff contends that he is due $45,000 because he attempted to obtain the licensing for Custom, pursuant to the agreement, but Coyle and Scassellati failed to provide the necessary information. (Brady Depo.: pg. 66-68). Defendants contend that the job description executed by plaintiff and Scassellati did not constitute a contract. In addition, defendants argue that even if it did constitute a contract, the breach of contract claims fails because plaintiff fails to allege any contract damages.

Under Missouri law, in order to succeed in a breach of contract claim, a plaintiff must prove that: (1) a contract exists; (2) that plaintiff had certain rights and defendant had certain obligations or duties under the contract; (3) that defendant breached the contract; and (4) plaintiff suffered damages. In re Tri-River Trading LLC, 317 B.R. 65 (Bktrcy. E.D.Mo. 2004); see also, Dyer v. Northwest Airlines Corporations, 334 F.Supp.2d 1196 (D.N.D. 2004); citing, United States v. Basin Elec. Power Co-op., 248 F.3d 781, 810 (8th Cir. 2001) (applying North Dakota law). The plaintiff has the burden of proving each element. Id.

Coyle testified, and plaintiff agreed, that although licensing was not noted in the initial ad describing the finance/marketing position, after speaking with plaintiff and learning of his experience in that area, it was incorporated into the job description signed by plaintiff and Scassellati. (Coyle Depo.: pg. 43-44; Brady Depo.: pg. 58-59). Coyle further testified that shortly after plaintiff began work, he and Scassellati decided that, due to the significant responsibilities

8

attendant to the Home Depot project, they felt that expanding into licensing at that time was not practical. (Coyle Depo.: pg. 47-48). Nevertheless, they supposedly agreed to increase plaintiff's salary to $45,000.[5] (Id: pg. 48). Plaintiff agrees that in April of 2003, his salary was increased from "a little over $500.00 a week to a little over $700.00 a week." (Brady Depo.: pg. 60). The correct final salary was apparently $720.00 per week, as noted.

In view of the circumstances presented, a reasonable interpretation of the job description lends itself to a finding that it was the mutual agreement of the parties to pay plaintiff for, *inter alia*, obtaining licensing for Custom, but prior to plaintiff accomplishing this goal, decided against it. Although plaintiff received financial remuneration for his efforts expended, he was deprived of some income, assuming he would have obtained a license prior to resigning from Custom's employ.

Based on the evidence at bar, there is insufficient undisputed material before the court to allow a determination of when the enhanced salary would have been earned, had the agreement continued. While plaintiff is not entitled to a year's enhanced salary, which could be an arbitrary measure of damages, he would be entitled to a salary rate of $45,000 per year from the time a license could be obtained until his resignation on September 2, 2003.

Defendants' motion for summary judgment will therefore be denied as to Count II, although it may be hoped that the parties will be able to resolve the amount of modest entitlement without trial.

Accordingly, it is hereby

---

[5]This amount differs somewhat from Coyle's answer to an interrogatory in which he stated that plaintiff's salary was increased from $538.46 to $720.00 per week. (Coyle Answer: Ex. L; line 12(b)); however, in opposition to plaintiff's summary judgment motion, defendants clarify that plaintiff's salary was increased, "albeit not to $45,000." (Defendants' Opposition: pg. 10).

9

ORDERED that plaintiff's motion for summary judgment (ECF 25) is GRANTED in part and DENIED in part. Count I of the complaint alleging overtime pay pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 is DISMISSED, Count II of the complaint alleging breach of contract remains pending. It is further

ORDERED that defendants' cross motion for summary judgment is GRANTED in part and DENIED in part, for the above stated reasons.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

May 11, 2005

Kansas City, Missouri

10